All right, Mr. Lee, you have two minutes for rebuttal that you've reserved, so that leaves you eight minutes out of the gate. You may proceed. Thank you, Your Honor. Good morning, and may it please the Court. Yongchun Lee, Federal Defenders for Talmadge Chatman. The district court erred when it relied on the pending unadjudicated charges to enhance Mr. Chatman's sentence in this case. An indictment and a mere arrest does not constitute proof by a preponderance of the evidence which is required for sentencing facts. But, I mean, the pre-sentence report included the facts that were in the police report, right? Well, I, that's, you know, Your Honor, that's actually a great point, okay? So, paragraph 33 of the PSR talks about how there is an arrest report. Now, we don't know the details of it, right? Because we don't know who the affiant is, we don't know what exactly is. But there's actually a reason to really distrust the arrest report based on the government's own concessions about it. So, the arrest report, as related by the PSR, so there's double hearsay already, right? Says that the, the sales occurred in the lobby of the apartment building and that they were videotaped, right? But the government says that's wrong, right? It says it below, it says in footnote 4 of its brief at page 9. It says that, well, the PSR says that, but that's not accurate. Apparently, again, we are not privy to this information, the court was not privy to this information, but apparently the government here had spoken to the special narcotics prosecutor and, and, and confirmed that the sales actually occurred inside, allegedly inside Mr. Chatman's apartment. And so there's actually a discrepancy in the arrest report. So, excuse me, wasn't there a motion to revoke his, his federal bail? There was, Your Honor. Were the videos offered to the court? There, there is no evidence at all that the, that the court has ever considered the videos, Your Honor. That, that, so, so the video, so the, so we have reason to distrust the, you know, the facial, if you, I don't think the arrest report has facial validity. You have to go underneath it to see what the witness, the affiant actually says, right? But even if, you know, the court wants to just sort of assume some facial. Is it a dispute whether the videos showed him selling, selling drugs in his apartment as opposed to selling them in the lobby? Well, so, so the, the point is that that means we can't trust the arrest report. There's something that's. Oh, but, but was that argued below, Mr. Lee? It didn't seem to me that that was the case. And it didn't seem like there was a challenge to the accuracy of the pre-sentence report or the authenticity of the video that was referenced or to the veracity of the undercover officers who purchased drugs from. Your Honor, this came up, this came up at the very last second at the sentencing, Your Honor. This is something that the court mentions. The court says, well, you know, in announcing it's. In the PSR, so it didn't just come up. Well, we, Your Honor, we, we, we, we objected to the PSR. We said that, you know, we don't know what the, we, we never got the arrest report. We don't know what the arrest report says, but we dispute the underlying allegations, Your Honor. We dispute the underlying. Well, I think the witness did not concede that he committed the offense. I don't recall a dispute of the underlying allegations. In other words, there is a distinction to be made between not conceding that you committed the crime, but not disputing the facts set forth in the PSR. You're saying that there was a dispute of the facts that are set forth in the PSR? Well, Your Honor, again, we never got the arrest report, right? No, you got the PSR. Well, we got the PSR, but we objected to the underlying allegations. And the point, Your Honor, is not what's correct or not, because I don't know what's correct, and the court doesn't know what's correct. It's only the government, well, we don't know what's correct, because guess what? It's a year and a half since the indictment, and the case is still pending, okay? So this, this notion that this is some sort of, like, buy and bust, it's caught on videotape, let's assume the guy's guilty, that's just not accurate. And that's also not the law, okay, Your Honor? You cannot increase somebody's, you know, the time you, you lock somebody up in a cage based on allegation and an arrest report. That's not good enough. You know, there has to be a finding based on the facts that something actually occurred. Now, the standard is lower for sentencing facts, but it's still a finding of actual criminal conduct. Well, I mean, facts set forth in an arrest report can be considered by a district judge in sentencing. You're not disputing that. Well, it depends, Your Honor. It depends. It depends on the court, the court itself, okay? Not anybody else, not the special narcotics prosecutor, not, not, not the obligation, responsibility of finding sentencing facts. And it's possible to rely on allegations in an arrest report if they are sufficiently detailed and if the court can assess, it's always hearsay, right? The court is looking at arrest reports, it's hearsay. Here, the court is not even looking at the arrest report, it's looking at what the probation officer opines about the PSR. So it's double hearsay. But nonetheless, even double hearsay, theoretically, could be considered reliable if the court can, can analyze, you know, the reliability of the hearsay, the witness's ability to perceive, to recall, the witness's, you know, motive to fabricate, all these kinds of things that the court normally considers in determining the reliability of hearsay. Here, we have none of that. We have none of that. I think your brief cited this circuit case, it's a Seventh Circuit case, I think, Terry. And Terry itself talks about where charges were described in a pre-sentence report and prepared from a police report that arguably contains reliable information that the court can rely on, right? I don't dispute that. Arguably, yes, it could be. Depends on the facts. But here, we have no facts. But there was no request for a hearing on any of this, right? At the time, if there's a dispute about what the facts are, or it is challenging of what's in that section of the pre-sentence report, it would be easy to just say, let's have a hearing on it. Well, Your Honor, it's not, I don't think it's our burden, it's an aggravating fact. We've denied, from the start, he's denied guilt on that. And that denying guilt is contesting the facts. He did not concede that he committed the offense. Well, there are other places... It seemed like, sort of, it seemed like it was designed to not, you know, not admit to the crime, but not run the risk of a fatico where you might lose, you know, acceptance or other things. Well, Your Honor, I respectfully submit that's your speculation. I don't know if that's, you know, what happened. Regardless, Your Honor, you know, this is something that the district judge sui sponte brought up at the very end of sentencing, and we objected. And there's no further obligation on the defendant's partner to object and to say, no, you're incorrect, I am not guilty, and the indictment is not a preponderance. But just so, I mean, this, the standard or the phrase that we have used before is minimal indicia of reliability, right? The court can rely on something if it provides some minimal indicia of reliability. That's Martinez. That's one of the phrases, yes, Your Honor, but it's also the preponderance of the evidence is the standard. And it has to be proved by preponderance of the evidence. And yes, you could have, you know, reliability, there's all sorts of things that could be reliable. Hearsay can be reliable. But it depends. It depends. It has to be a consideration of the facts. It has to be a finding of facts, Your Honor. Okay? And the district court never did that. The district court, that's the difference between this case and almost every other case I've seen. The district court never actually peeked beneath the indictment or peeked beneath what's in the PSR. It never looked. But the government does make their representations. We've got them on video. We've got undercover officers who did a hand-to-hand with this defendant. Your Honor, respectfully submit, okay, if we can, you know, send somebody to prison based on the prosecutor's words, I'd be out of a job, right? Just because the prosecutor represents that he spoke to another prosecutor and that that's what the other prosecutor said, that's not proof. That's not evidence, Your Honor. If the government, you know, if the court really wanted to, you know, enhance the sentence, Mr. Chapman's sentence, based on this pending charge, it could easily, it would be five minutes, Your Honor. Look at the video. If there really is a video, I don't know what, again, I don't know what the video is. If the sales occurred in the lobby, it makes sense that there's video surveillance, right? I don't know what the video surveillance inside his apartment is. I just don't know. And neither does the court, Your Honor. That's the problem with this. Look, the alleged sale was to an undercover officer who could have been wearing a video. It could be, but again, these are, it's all speculation. I don't know this, you don't know this, and the district court didn't know. Regarding the four-level enhancement, it's a different situation, but the same problem, the same problem that the district judge not taking seriously the requirement of preponderance of the evidence. The evidence, you know, let's, don't take my word for the video, I assume Your Honor's have viewed the video, but take my friend Mr. Ryan's word for it in the district court. He says that the video is insufficient proof that there was anybody that could have been injured. And that, to me, is the end of the case there. That means, it follows logically from that, that he could not possibly have the intent, by a preponderance, have the intent to injure someone, right? All of the evidence is entirely consistent with him shooting not at a person, right? So the felony statute assaults requires that he's trying to injure somebody, right? The evidence is entirely consistent with him shooting next to a person, for instance, trying to threaten a person and not to injure him, right? Well, I mean, you have him aiming, shooting, continue walking, lowering, raising again, and then shooting four times, and then a screech of tires off camera. That's right. That would, I would think, support an inference that he's shooting at the vehicle. It supports it. Respectfully, I would say that it's, it may support, and it's equally consistent that he's shooting near, near a vehicle and trying to scare somebody. And that's not enough for assault, okay? And it's government's burden to prove the enhancement, government's burden to prove that every element of this alleged state felony be met. And the, the element that has to prove, by a preponderance, is there was an intent to injure. And that, I mean, a firearm will injure. No, no, but that means you have to be, the gun has to be pointed at a person, right? If you, if, if, if Mr. Chapman, instead of shooting at, let's say there was a fleeing car. But even assuming that, again, we dispute that the screeching sound is, means, it means that there was a fleeing car, okay? But even if we accept that inference, that doesn't mean that he was shooting at the car. He could have been shooting very well near the car, trying to scare the occupants. And that would not be enough for, for the enhancement in this case. It does not prove assault under, under New York law. And, and respectfully, the, the, the video is entirely consistent with that. It is not more likely. But that would be true even if the video is showing the car he was shooting at, right? I mean, you could still argue. But I think that. That this was intended to scare, not injure. That's a frequent defense for this state crime. Well, but if, if that were the evidence, I mean, on the preponderance, I would lose on that. Okay? Because I think that you could, you could argue that he's shooting at a car. You can reasonably assume that there was a natural consequence to shooting at a car is to injure somebody. Here, we just don't have that. So, so the fact that your, your Honor is highlighting just doesn't exist here. We don't know what he's shooting at. You know, and this is a unique situation, right? It's a closed universe, right? The government itself said there's no other evidence. All we got in the whole world is the video, right? And the video doesn't break the tie. And the, and the court can only enhance his punish, his penalty, defendant's sentence based, if there's, it's past the tie. It's 51% more likely that he was intending to shoot someone instead of to threaten someone. All right. Thank you, Your Honor. Thank you, Mr. Lee. You've got two minutes for rebuttal. We'll now hear from Mr. Ryan on behalf of the government. Good morning, Your Honor. May it please the court. My name is Gilbert Ryan. I'm an assistant United States attorney in the Eastern District of New York, and I represented the government in the district court in this case. I'd like to start off by addressing the issue of the pending state court matter, which was considered by the district court. Counsel talked about what the law is and what the court needs to decide in connection with this issue is whether or not the defendant was afforded due process in this case. And due process simply requires that the defendant be notified of the allegations and be given an opportunity to respond to them. And the reason we need to have this requirement is because under cases like JUA, this court has held that a defendant cannot be sentenced based upon inaccurate or misinformation. And here I submit, there are several reasons why due process was afforded to the defendant. First, the court was provided a copy of the indictment in this case, which I understand and the government agrees by itself would not be enough to support an enhancement sentence. Although didn't the district court suggest that it thought it would? And isn't that a concern? Didn't the district court say, oh, this is evidence that there was a finding by a preponderance of the evidence? The district court did say that. That is obviously not correct. The government agrees. Does that concern us then, to the extent that's not correct, that that was part of the district court's reasoning? Ultimately, the question for this court is whether or not there is a sufficient record made for review on appeal. And so even though the court did make that statement, there was enough of discussion about what the court actually considered and enough of a record about what was before the court to satisfy this court that due process was afforded and that there was enough of information for there to be a finding by a preponderance. Well, but if we're reviewing the district court's determination to consider that, and essentially it's finding, I understand you're sort of framing it as a due process argument, but there's just a straight up evaluating the sentence for clear error. And if we see that the district court was under the misimpression that that indictment represented a finding by preponderance, and therefore it was fair game to consider these unproven allegations, even if there were sufficient evidence to reach that conclusion otherwise, that's not why the court got there. At least we have serious doubt. Why isn't that itself reason to reverse or vacate? By itself, there's no requirement that the district court affirmatively declare that I'm finding by preponderance of the evidence that the defendant committed these underlying crimes. The court made clear, I think, through all the information that it considered and what was before it, and the record shows that there was enough of an ability for the court to make a determination by preponderance. Well, the court referenced specifically the fact that the sales were video recorded and made to undercover officers in his building. That's correct. The court referenced that. That was included in the PSR. And the court was actually intimately familiar with the facts of this case. This isn't a situation where, for the first time at the time of sentencing, the court is learning that there has been this arrest and that there's this other conduct which might be in dispute. At the bond revocation hearing, which occurred six months before the sentencing, the court had the opportunity to speak with both parties about what had happened. The government had submitted a detention letter discussing what it had learned about this case, discussions with the Special Narcotics Prosecutor's Office about their investigation. It was a long-term investigation involving a number of buys of narcotics from the defendant at his apartment. And the pre-trial officer in the pre-trial officer's memo to the court, which was submitted under seal to this court, said that she had spoken with the arresting officer in this case, had actually spoken with a witness who informed pre-trial, who then relayed to the court, what had actually happened in this case. And so there was a large amount of information to satisfy what Judge Sullivan referred to earlier as that minimum indicia of reliability so that the court could be satisfied that the defendant had actually engaged in this conduct, which would eventually consider as part of enhancing its sentence. As I stated before, there's no specific procedure that has to be followed. The court does not have to call witnesses or hear from witnesses. It just has to be satisfied that there was a sufficient indicia of reliability to support the information that it's going to consider. Can I ask you about the enhancement? Yes. So I'm trying to, initially the concept of an enhancement was supported by the notion that the firing in a neighborhood constituted reckless endangerment. And the government took the position that the evidence couldn't support that basis for the enhancement. Can you tell me a little bit about why the evidence doesn't support that? Yes, Judge. And this is actually a good point because for the reasons why it cannot support the enhancement under our reckless endangerment theory is why it can support the enhancement under an attempted assault theory. That's helpful. That's going to be my next one. So reckless endangerment under New York law, there's two different types. There's felony reckless endangerment, which requires a depraved indifference mindset. And there's also a misdemeanor reckless endangerment, which cannot form the basis of an enhancement because it's only a misdemeanor. The standard for depraved indifference under New York law, as the New York Court of Appeals has said, is extremely high. You have to be acting with indifference to the value of human life. But if he's firing at someone, not firing as a warning shot, but if he's firing at someone, which is at the heart of the theory on the assault, why wouldn't that be reckless endangerment in the felony sense? So if a person fires a firearm directly at a person purposely, by definition, that cannot be depraved indifference because then under New York law, every single intentional murder with a firearm would also then be depraved indifference murder. And it cannot be. The Court of Appeals has said it cannot be. I see. It's not a lesser included. It's not. They are distinct. They are distinct. And so for these reasons, because of the observations that the district court made when talking about the enhancement, and the district court made several of them, talked about how the defendant was taking a particular shooting stance, had his arm outstretched, his position on the street, his aiming of the firearm, the multiple shots, pauses between shots, the district court's observations about the screech of tires, all of this leads to the district court's inference. It's a factual inference that the court drew that the defendant was purposely aiming at a person. And the district court, as the finder of fact, determining whether or not this enhancement applies, is permitted to those determinations. It's clear error analysis. How do we distinguish? I mean, there are permissible inferences and then there's impermissible speculation, right? That's the line we're always trying to draw in these kinds of cases. And on a preponderance standard, I think the inference that you're drawing has to be, what, at least a smidge more likely than the alternate inference? Right. So I don't quibble with the notion that there was intentionality, that whatever he was doing, he was doing with purpose. But I'm trying to figure out how we can non-speculatively infer that he's shooting at someone rather, A, we don't even know, we don't know whether that car was a bystander who happened to find themselves in the wrong place at the wrong time or whether it was somebody who was actually involved in the shooting. But let's even assume it was. How is it more likely that he's shooting at the individuals within the vehicle rather than at the tires? Rather than in a way to create fear and intimidation but not put them at risk of being shot? Well, this is obviously a factual question. And the district court, in finding the facts, specifically talked about how the district court was certain that the defendant was shooting at a person because of these factors that I've talked about. The outstretched arm, his position in the street. I don't understand how those factors tie. I mean, if I were shooting a warning shot at somebody's car tires, I would have all of those same features would apply in equal measure. Well, the district court viewed the video because it was provided by the government. And the district court noted the position of the defendant's shoulders, the fact that his arm was outstretched, his position in the street. If you watch the video, the defendant looks back at the direction that he is shooting, runs away. I mean, I've seen the video, I've read the findings, but I'm asking you to tell me why that inference, why it's more likely that that means he's shooting at a person rather than shooting to scare a person in the vicinity of a The district court also noted that the defendant had been walking around this residential neighborhood. It's a densely populated residential neighborhood for quite a while. The shooting happens about eight minutes into the video compilation that was created. So for eight minutes, the defendant had been walking around, doesn't take out his firearm at all, doesn't shoot at anyone. It's only when he gets to the street finding a target that he takes out the gun and acts in the manner that I've been describing, stretches out his arm. I would have thought you would say that four shots is inconsistent with warning. Yes. One shot is a warning. Aiming is a warning, but four shots in rapid succession after deliberately walking towards a target implies intentionality and a target. Yes, Judge, I agree with that. It was multiple shots and the district court was clear that there were multiple shots, that there was pausing between the shots as if aiming at a person. Or aiming at a target that isn't a person. I mean, you still haven't told me what, you've told me what the court, how the court got to its conclusion. You haven't told me why it's not speculative. That's where I'm struggling. Well, here obviously the standard is a preponderance, more likely than not. If it was a higher standard, reasonable doubt, perhaps there'd be a question about whether or not the defendant could be guilty at a trial for attempted assault. But here, given the fact it was a densely populated neighborhood, all these factors coming together, the confluence of all of them, permitted the district court to reach the principal conclusion. Why does the densely populated neighborhood weigh on one side? Let's have these two different hypotheses, right? He's shooting at the tires, he's shooting to convey a message versus he's shooting to kill or maim or hurt. Why is a densely populated neighborhood tip, scales on that? Because it makes it more likely than not that a person is going to be around. We're not talking about a sparse, you know, populated suburban area. We're talking about a major thoroughfare. I'm giving you that there's a person there, whether they're in a car, whether, I'm giving you that that's a reasonable inference. Why does it then support the inference that it's more likely than not that he's shooting to injure that person or kill that person as opposed to shooting to intimidate that person or send a message? Well, because it's just one factor out of many to consider. That factor, in connection with all the other ones that the district court talked about and that I've laid out, allow the district court to reach that ultimate conclusion that it was more likely than not that the defendant was shooting at a person and attempting to injure that person, attempting to assault that person. I see that my time has expired. If there's any additional questions, I'm happy to answer them. Otherwise, we would ask that the judgment of the district court be affirmed. Thank you, Mr. Ryan. We'll now hear from Mr. Lee for two minutes of rebuttal. Thank you, Your Honor. Four quick points. First, the district court's obvious error is actually critical. The district court says there's an indictment. Indictment is proved by preponderance. And then, so what happens is this defense counsel corrects her and said, oh, Your Honor, that's not correct. You know, an indictment is just probable cause. It's not preponderance. And the district court's response is actually exactly why we're here. The district court says, oh, I don't, basically, I'm allowed to take any, to look at anything I want. Take it up, take it, file a notice of appeal if you disagree. Well, that's why we're here, okay? The district court did reference the fact that it was on video and it was to and under cover, right? Absolutely, Your Honor. So this is what I want to say about that. There's always evidence when somebody's arrested, right, or charged. There's always evidence somewhere out in the ether. It's, you know, let's say that there's a robbery and that there's an arrest. And the arrest report, some double hearsay, there's some victim. We don't know anything about the victim. We don't know anything about the victim's ability to perceive. And the victim says the defendant is the person who robbed them. Well, so what, that's why we have an arrest. That's probably why there's an indictment. Well, we do these bail hearings all the time, Mr. Lee, right? I mean, judges will consider the strength of the case. And if they're told there's a video and there's an undercover, that's different than if it's a snitch or if it's a... No, if it's an eyewitness, it would be the same, Your Honor. If I said there's an eyewitness, but we don't know. You have to, the court, again, Your Honor, this is not just a dinner table conversation or, you know, people talking about whether something is likely to have happened or not. This is about how much time somebody has to spend in prison. But you're a hearing. No, no, no, no, not at all, Your Honor. The court could look at the video or the court could look at the arrest report and say... Why can't the court take the government's representation of the evidence and consider that to be... But that's not the way, Your Honor, most respectfully... Most respectfully, Your Honor, that is not the way the system works. I mean, we can't just, if the prosecutor thinks somebody's guilty, doesn't mean that he is. Well, but the government stated what the evidence was of this sale, right? And there's no dispute about those things. There's only a statement that he doesn't concede that he's guilty of this crime. No, again, the defendant says he's not guilty. I don't know what... It didn't happen. That's the same as saying I dispute the facts. Okay, but that then required... I think that's what you're saying. Him saying, I don't concede that... He doesn't concede that he's guilty of the crime means then that government has to put on evidence, right? They need to show the video. They need to call the undercovers. They need to do all that. No, no. Again, Your Honor, you're putting words in my mouth. So tell me what this should look like. What should it look like? Five minutes, Your Honor. If you're going to lock somebody up in prison longer, it does... I respectfully said that the court could... If such videos exist and if they are really so clear that shows a sale by the defendant to undercover, well, why not? It takes five minutes to look at a video. Or it could look at the detailed, you know, maybe there's an affidavit from the undercover saying, oh, I know Chapman. I know that guy's Chapman and he sold me drugs. I'm just trying to figure out what you're saying. So you're saying that that is really the rule. That you can't rely on an oral statement. There has to be an affidavit. No, no, no, Your Honor. I said the court, the district court has to make a fact finding that there's a preponderance of the evidence to show that he committed this crime. And you can't just take the... Was there ever a request by the defense for a Fatico hearing on any of these issues? On the second issue, there was almost going to be a Fatico hearing on the four-level enhancement, right? And the court canceled the Fatico. It scheduled the Fatico and canceled it because the government said, all we got is the video, so we don't need a Fatico. With respect to the first point, Your Honor, again, there's nothing more than Mr. Chapman needs to do other than say, I object. I assert my innocence. I've asserted my innocence. Those charges are still pending. And respectfully, most district judges would then not consider the charge. There's no reason to consider the charge. And so he's done everything he could. He's done everything he needs to object to this. And it wasn't until the very end of the sentencing that the district court brought this up as a fact that it was going to rely on in enhancing his sentence. This was not at all clear. This is the district court... And then when the district court said it was going to... But there's a revocation based on this very fact, right? Yeah, the revocation is... You think it was shocking? It was shocking to everybody in the courtroom that this was going to be relevant to sentencing? Your Honor, as a... Yes, Your Honor. I think it depends. Stick with it. You know, Your Honor, the revocation is a completely different... It's irrelevant to this issue, Your Honor. The revocation is based on, you know, as the government says, 3148b2 of the of the, you know, revocation statute says that all you need is a probable cause finding. If you're arrested and there's a probable cause determination that you committed a new crime while on bail, that creates a presumption of detention. So it's a very different situation. It's not a preponderant standard, okay? And so... And, you know, the fact that it's a bail... It's water under bridge, too. We don't object. We didn't appeal that. It's something different. So if I could just, you know, finish my two points here. You know, nothing breaks the tie on the enhancement, Your Honor. The video is... This is an unusual situation, which is a closed universe, and the video just doesn't break the tie. Only speculation. Only speculation takes you to the point where, to conclude that he intended to shoot a person rather than to shoot near a person or at something else. Thank you, Your Honor. Oh, all right. Thank you. I think you said four things. Yeah, the other one I got. All right. Thank you, Mr. Lee. Thank you, Mr. Ryan. We will reserve decision.